IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TERRENCE MOORE and DIXIE MOORE,

                  Plaintiffs,                  OPINION AND ORDER

    v.

                                          16-cv-656-wmc

WELLS FARGO HOME MORTGAGE,

                  Defendant.

---

Plaintiffs Terrence and Dixie Moore assert claims against defendant Wells Fargo Home Mortgage, the servicer of their home mortgage, for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and Wis. Stat. § 244.71.  Before the court is defendant's motion for summary judgment.  (Dkt. #13.)  Because the undisputed facts foreclose a finding that Wells Fargo violated RESPA or Wisconsin state law, *or* even that the Moores were injured by any alleged violation, the court will grant the motion, enter judgment in defendant's favor, and close this case.

## UNDISPUTED FACTS[1]

### A. The Parties

Plaintiffs purchased the home that is the subject of the underlying mortgage in 2006.  Oddly, at least in this day and age (not to mention in a joint property state), plaintiff Dixie Moore is not on the formally recorded warranty deed to the property, nor a party to the note, mortgage or most recent loan modification agreement.  Nevertheless, plaintiffs

---

[1] For the purpose of deciding the present motion, unless otherwise noted, the court finds the following facts undisputed and material when viewed in a light most favorable to plaintiff as the non-moving party.

contend that they purchased the home using money Dixie inherited when her mother passed away, along with Terrance's $208,050.00 purchase money mortgage.[2]

The defendant is Wells Fargo Home Mortgage. Wells Fargo is the servicer of Terrence Moore's home mortgage for all times pertinent to plaintiffs' claims. Relevant to the description of the foreclosure action, the owner of the mortgage is Deutsche Bank National Trust Company.

### B. 2011 Loan Modification

Terrence entered into a loan modification with an effective date of February 1, 2011. While defendant disputes any "legal effect," the 2011 loan modification incorrectly identified Wells Fargo as the "lender" on the loan. (Def.'s Resp. to Pls.' Add'l PFOFs (dkt. #27) ¶ 4.) The 2011 modification set the new principal of the loan at $272,481.95, which purportedly consisted of "the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized." (Piotrowski Suppl. Aff., Ex. 1 (dkt. #28-1) pp.36-37.) The modification also extended the term of the loan to 40 years, from the prior 30 years.[3] Finally, the modification required a first payment of $1,190.31, due on March 1, 2011.

### C. State Court Foreclosure Action and Bankruptcy Proceedings

In June 2011, Deutsche Bank National Trust Company filed a foreclosure action

[2] For ease of reference, the court refers to the plaintiffs by their first names.

[3] While plaintiffs also describe the financial consequences of this extension, Terrance's apparent misunderstanding that the modification extended the terms of the loan and his motivations for agreeing to it, all of these proposed facts are not relevant to the claims asserted in their lawsuit.

against plaintiff Terrence Moore and "Jane Doe" Moore in Dane County Circuit Court. *Deutsche Bank Nat'l Trust Co. v. Moore*, No. 2011CV002758 (Wis. Dane Cty. June 15, 2011). (*See also* Piotrowski Aff., Ex. A (dkt. #16-1).)[4] Although Jane Doe was later identified as Dixie, she was never added as a party because she was never formally a party to the loan documents, and therefore could not be held personally liable for any amount adjudged due from Terrence to Deutsche Bank.

This same mortgage loan had previously been the subject of two loan repayment agreements, an earlier loan modification agreement and the negotiated dismissal of a 2008 foreclosure action. The 2011 foreclosure action was also briefly suspended but then reopened after efforts to mitigate the default failed. The state court entered an order of judgment of foreclosure in November 2012, which provided, among other things, a six-month redemption period, allowing for repurchase of the foreclosed home.

With the consent of the state court, Deutsche Bank scheduled the property for a sheriff's sale on June 4, 2013, but then agreed to numerous continuances, adjourning the sale to December 3, 2013. During this time, Deutsche Bank worked with Terrance in an attempt to negotiate a resolution, including mediation efforts through the Dane County Foreclosure Program in May 2013 and a further review for yet another loan modification

---

[4] In response to defendant's proposed findings of fact, plaintiffs do not dispute that Terrance was eventually in default on his loan. (Pls.' Resp. to Def.'s PFOFs (dkt. #19) ¶ 6 (admitting that Deutsche Bank reopened the state court action in 2012 when Moore defaulted on the loan as modified by the 2011 loan modification).) In their own proposed findings, however, plaintiffs represent that Terrance made the necessary March 1 payment and each subsequent payment at least through July 2011. (Pls.' Add'l PFOFS (dkt. #24) ¶ 15.) The court agrees with defendant that this purported dispute is not material because the issue of default was previously adjudicated by the state court. As explained more fully below, the *Rooker-Feldman* doctrine prevents plaintiff from relitigating the findings of the state court in this court. (*See supra* Opinion § I.)

in July 2013. The parties, however, failed to reach any agreement.

In November 2013, Moore then filed for bankruptcy resulting in an automatic stay of the state court foreclosure proceedings. *In re Moore*, No. 13-15492-rdm (Bankr. W.D. Wis. Nov. 12, 2013). (*See* Piotrowski Aff., Ex. E (dkt. #16-5).) While this stay was in place, defendant Wells Fargo and Moore negotiated another modified payment arrangement by stipulation, which was entered in the bankruptcy record in June 2015. (*See* Piotrowski Aff., Ex. D (dkt. #16-4) 36-38.) Under that agreement, Moore was to pay Wells Fargo a lump sum payment of $9,000 on or before June 30, 2015, and then resume monthly mortgage payments in July 2015. After Moore failed to make the $9,000 payment, Deutsche Bank sought and was granted relief from the automatic stay in December 2015. The sheriff's sale was subsequently rescheduled for March 22, 2016.

In response, Moore converted his Chapter 13 bankruptcy to a Chapter 7 bankruptcy on March 10, 2016, resulting in another cancellation of the sale. On July 13, 2016, the bankruptcy court entered a discharge action. With the state court's approval, Deutsche Bank again rescheduled a sheriff's sale for October 11, 2016.

### D. Inquiry and Response

On August 18, 2016, Wells Fargo's Customer Care and Recovery Group ("CCRG") received a written communication from Terrence regarding Loan No. 0155269822 ("the Inquiry"). (Golden Aff., Ex. 1 (dkt. #15-1).) Moore contends that this Inquiry was a "Qualified Written Request" within the meaning of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e) The Inquiry, dated August 10 and signed by Terrance on August 15, 2016, provides Terrance's account of the history of his loan since 2011,

then states "[a]s a result, I do not know the current status of my mortgage, or how I can reinstate or modify it or bring it current, who my homeowners' insurance is through, or even who is responsible for making decisions on my loan or managing my escrow account." (*Id.* at 2.) Terrance also proceeded to list *22* separate requests for information, including: identities of the current and all prior owners and servicers of the loan; an account of all funds placed into or paid out of escrow; any other payments on the loan; an identification of each and every modification, forbearance, forgiveness, reinstatement, or other debt-relief or mortgage-relief program for which he had been considered, specifically referencing a Home Affordable Modification program ("HAMP"); a copy of every notice of transfer of servicing rights or transfer of ownership ever sent to him, a copy of every denial of eligibility, and a copy of every notice of acceleration, default, or intent to foreclose ever sent to him. (*Id.* at 2-3.)

On August 18, 2016, CCRG commenced research on the issues raised in the Inquiry. Around that same time, CCRG also called Terrance to confirm his contact information and advise that Wells Fargo estimated a September 1 resolution date. Between August 19 and August 29, CCRG investigated and initiated research by other departments to address Terrance's concerns raised in the Inquiry. On September 1, CCRG advised Terrance in a telephone message that Wells Fargo's research was continuing and estimated the projected response date would now be September 16. CCRG also attempted to reach Terrance at a second designated telephone number and to reach an authorized third party, Law Advisors. Although neither proved successful, CCRG's efforts continued. On September 16, CCRG again advised Terrance via telephone that its research was

continuing and extended the projected response date to September 30 -- 11 days from the state court sanctioned foreclosure sale by the Dane County Sheriff.

As promised, Wells Fargo sent Terrance a three-page response, with 58 pages of attachments, dated September 30, 2016 ("the Response"). (Golden Aff., Ex. 2 (dkt. #15-2).) That same day, CCRG also advised Terrance by telephone that it had completed its research and response and would send that response to him by mail with supporting documents attached. Among other requests, the Response itself: (1) described the current status of his loan, including the most recent modification review; (2) provided an overview of the bankruptcy stipulation agreement, an explanation of insurance premiums, and information validating the loan; and (3) included copies of the note and mortgage, identification of Wells Fargo as the servicer and Deutsche Bank as the owner, along with other attachments covering the account history. (*Id.* at 1-3.) Moreover, CCRG mailed that response to Terrance at the correct mailing address.

Plaintiffs now contend that the Response to the QWR did not answer many of Terrance's questions. Defendant agrees that the response "did not provide all of the information demanded by Moore, particularly with respect to his extensive requests for information not related to servicing -- e.g., pertaining to his eligibility for and Well Fargo's processing of his applications for loan modification (e.g., Requests Nos. 12-16 & 21) -- and excessively broad demands for information (e.g., Requests Nos. 8-9)." (Def.'s Resp. to Pls.' Add'l PFOFs (dkt. #27) ¶ 28.) Indeed, the Response stated, "We're unable to provide any further information because your remaining requests are too broad. If you provide us with more specific details about what you're seeking, we'll review your request again." (Golden

Aff., Ex. 2 (dkt. #15-2) 3.)

### E.    Return to State Court and Bankruptcy Court

While CCRG was preparing a response, on September 28, 2016, Terrance also filed a motion in Dane County Circuit Court seeking to avoid or delay the sale indefinitely "to allow him to litigate his counterclaims maturing after pleading." (Piotrowski Aff., Ex. G (dkt. #16-7).) That same day, Terrance also asserted counterclaims against Deutsche Bank and/or Wells Fargo under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), and Wis. Stat. § 224.77, for failing to:  (1) "approve Moore for loan modification (or by approving him for an 'incorrect' modification)"; and (2) "timely and adequately address his Inquiry." (Def.'s PFOFs (dkt. #17) ¶ 44; *see also* Piotrowski Aff., Ex. A (dkt. #16-1) p.7 (describing counterclaim filed 9/28/16).)  Still on September 28, plaintiffs similarly filed the present federal action, asserting the same RESPA and state law violations against Wells Fargo. (Compl. (dkt. #1).)

Defendant does not dispute that Moore filed these counterclaims in the state foreclosure action and this federal lawsuit *before* the response deadline under RESPA had expired. (Pls.' Resp. to Def.'s PFOFs (dkt. #19) ¶ 45.)  In response to Terrance's motion in state court, Deutsche Bank filed an objection, asserting several grounds.  The state court held a hearing on Terrance's motion to stay and on defendant's objection to the filing of counterclaims on November 23, 2016, during which it declined to allow the untimely amendment of the counterclaims and denied the motion to further stay the sheriff's sale. (Piotrowski Aff., Ex. A (dkt. #16-1) p.8 (describing oral ruling that "Bank is entitled to foreclosure, bank can proceed with sheriff's sale, it will not be stayed.  Court denies any

other outstanding motions.").)

Deutsche Bank conducted the actual sheriff's sale on November 29, 2016. Deutsche Bank, however, was prevented from obtaining an order confirming sheriff's sale when Terrance filed yet *another* petition for bankruptcy on December 27, 2016. *See In re Moore*, No. 16-14280-cjf (Bankr. W.D. Wis. Dec. 27, 2016). That bankruptcy petition remains pending. It also appears that despite the sheriff's sale, plaintiffs continue to live in the house.

OPINION

## I. What This Case Is *Not* About

Before turning to the merits of plaintiffs' claims, it is first necessary to describe their scope, and more specifically, what plaintiffs' claims do not -- and, indeed, cannot -- challenge. The *Rooker-Feldman* doctrine bars plaintiffs from challenging the state court's foreclosure judgment, which necessarily includes any challenge to (1) the state court's finding of default by Terrance Moore on his mortgage loan as modified by the 2011 loan modification, (2) the validity or enforceability of that mortgage, or (3) the amount due under the mortgage. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). This doctrine applies generally to "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The express reason for the doctrine is that "no matter how erroneous or

unconstitutional the state court judgment may be, only the Supreme Court of the United States has jurisdiction to review it." *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012).

Moreover, contrary to plaintiffs' position, the state court judgment of foreclosure is a "final judgment," independent of an order confirming the sheriff's sale by the state court, for purposes of limiting this court's jurisdiction. *See Shuput v. Lauer*, 109 Wis. 2d 164, 172, 325 N.W.2d 321, 326 (1982) (holding that "judgment of foreclosure and sale is a final judgment appealable as a matter of right" and that "the order confirming the sale is a final order appealable of right . . . that enables the appellant to challenge the proceedings subsequent to the judgment of foreclosure and sale, not the judgment itself"); *see Mains v. Citibank, N.A.*, 852 F.3d 669, 676 (7th Cir.), *cert. denied*, 138 S. Ct. 227, 199 L. Ed. 2d 121 (2017) (applying *Rooker-Feldman* doctrine to limit RESPA claim, finding any alleged challenge to the amount due on a mortgage necessary implicated the state court's judgment of foreclosure).

Finally, the *Rooker-Feldman* doctrine bars challenges that *could* have been argued in the state proceeding but were not. *See Levin Attorney Registration & Disciplinary Comm'n of the Supreme Court of Ill.*, 74 F.3d 763, 766 (7th Cir. 1996) ("The claims raised in district court need not have been argued in the state judicial proceeding for them to be barred by the *Rooker-Feldman* doctrine."). For example, plaintiffs here attempt to challenge payments to escrow for purposes of securing insurance. Those arguments certainly could have been raised as part of the foreclosure action. Regardless, those and similar arguments are inextricably intertwined with the foreclosure judgment itself, since deciding whether payments were properly diverted to an escrow account for purposes of paying insurance

goes directly to the amount owed under the mortgage. As such, this federal court is barred from reviewing such challenges.[5]

The court has taken pains to describe what this case is *not* about because, while plaintiffs purport to agree unequivocally that they "are not attempting in any way" to "invalidate the foreclosure judgment" through this lawsuit (Pls.' Opp'n (dkt. #18) 20), some of their proposed findings of facts and theories of relief appear to belie that statement -- particularly their attempt to revisit the terms of the 2011 loan modification, the finding of default and the determination of the amount owed. Whether done to make them appear more sympathetic or in an attempt to claw back a damages theory, the court will ignore these settled facts and theories, and instead focus on the straight-forward issues that plaintiffs actually raise in this lawsuit: namely, whether Wells Fargo violated RESPA and Wisconsin's complementary law in responding to the plaintiffs' inquiry; and if so, what injury, if any, did plaintiffs suffer as a result of that violation.

## II. Merits of Plaintiffs' RESPA and Wis. Stat. § 224.77 Claims

### A. Overview

"RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans." *Catalan v. GMAC*

---

[5] Even if such challenges were not subject to a jurisdictional bar under the *Rooker-Feldman* doctrine, claim preclusion would appear to prevent plaintiffs from raising claims for relief tied to their foreclosure action. *See N. States Power Co. v. Bugher*, 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995) (describing elements for claim preclusion); *see also Berry v. Wells Fargo Bank, N.A.*, 865 F.3d 880, 883 (7th Cir. 2017) (holding that Wells Fargo as the servicer was in privity with the owner of the mortgage for purposes of applying claim preclusion).

*Mortg. Corp.*, 629 F.3d 676, 679 (7th Cir. 2011). As defined by RESPA, "servicing" a loan "means receiving any scheduled period payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3); *see also Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 856-57 (7th Cir. 2017). Pertinent to plaintiffs' present lawsuit, one provision of RESPA requires "loan servicers [to] respond promptly to borrowers' written request for information, § 2605(e)." *Catalan*, 629 F.3d at 679.

Specifically, servicers are required to respond to a "qualified written request" or "QWR" which is defined as a "written correspondence . . . that includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

The statute provides that within 30 days of receiving a QWR (not including legal public holidays, Saturdays and Sundays), a mortgage servicer, like the defendant here, must take one of three actions:

> (1) make appropriate corrections to the borrower's account and notify the borrower in writing of the corrections; (2) investigate the borrower's account and provide the borrower with a written clarification as to why the servicer believes the borrower's account to be correct; or (3) investigate the borrower's account and either provide the requested information or provide an explanation as to why the requested information is unavailable.

*Catalan*, 629 F.3d at 680 (citing § 2605(e)(2)).[6]  Moreover, the servicer must provide a written response acknowledging receipt of the QWR within five days, also excluding legal holidays, Saturdays and Sundays.  12 U.S.C. § 2605(e)(1)(A).

Subsection (f) goes on to provide a private right of action for violations of RESPA, including damages for "any actual damages to the borrower as a result of the failure"; and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1).

Plaintiffs also assert a claim under Wisconsin Statute § 224.77(1), which describes prohibited actions on the part of mortgage brokers, including:

> (i) Demonstrate a lack of competency to act as a mortgage banker, mortgage loan originator, or mortgage broker in a way that safeguards the interests of the public.
> . . .
> (k) Violate any provision of this subchapter, ch. 138, or any federal or state statute, rule, or regulation that relates to practice as a mortgage banker, mortgage loan originator, or mortgage broker.
> . . .
> (m) Engage in conduct, whether of the same or a different character than specified elsewhere in this section, that constitutes improper, fraudulent, or dishonest dealing.

Wis. Stat. § 224/77(1).  (*See* Compl. (dkt. #1) ¶ 32.)  In fairness, this Wisconsin statute "essentially points back to the alleged RESPA violation by prohibiting mortgage bankers and brokers from violating any federal statute that regulates their practice."  *Diedrich v.*

---

[6] RESPA previously required action within 60 days, but the current version of the statute, which governs plaintiffs' claims here, requires action within 30 days (excluding legal public holidays, Saturdays, and Sundays).  12 U.S.C. § 2605(e)(2).

*Ocwen Loan Servicing, LLC*, 839 F.3d 583, 587 (7th Cir. 2016).[7]

## B. Compliance with RESPA and Wisconsin law

Without conceding that the plaintiffs' August 10, 2016, inquiry constitutes a valid QWR, defendant does not move for summary judgment on that basis, and for good reason. "RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly." *Catalan*, 629 F.3d at 687 (explaining that "any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond"). Plaintiffs have certainly put forth sufficient evidence from which a reasonable trier of fact could conclude that the letter constituted a QWR.

Still, that there is flexibility as to what constitutes a QWR does *not* mean that the scope of information that may be sought has no appropriate limit. For example, "[t]he statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to services." *Perron*, 845 F.3d at 857. As described above, RESPA governs the obligations of mortgage *servicers*; as such, the information sought must relate to the servicing of a mortgage. *Id.* at 856-57. In particular, inquiries about a loan document's origination and validity are not within the scope of § 2605(e), *Knopp v. J.P. Morgan Chase Bank & Co.*, 684 F. App'x 579, 580-81 (7th Cir. May 5, 2017), nor are requests for information about

---

[7] Defendant challenges Dixie Moore's standing to assert claims since she is not on the mortgage. Plaintiffs effectively concede that she lacks standing under RESPA, but contends that the remedy provision, Wis. Stat. § 224.80, extends beyond RESPA to cover all "aggrieved persons." (Pl.'s Opp'n (dkt. #18) 4-5.) For purposes of considering defendant's challenge, therefore, the court will assume that Dixie Moore has standing to pursue her state law claim, since it fails as a matter of law for reasons explained elsewhere.

loan modifications, *Mukulski v. Wells Fargo Bank, N.A.*, No. 17-cv-179, 2017 WL 3701213, at *3 (E.D. Wis. Aug. 25, 2017) (collecting cases). In other words, "a qualified written request can't be used to collect information about, or allege an error in, the underlying mortgage loan." *Perron*, 845 F.3d at 857.

Plaintiffs effectively concede that a number of their requests do not fall within the scope of RESPA, but contend that defendant's responses to three categories of appropriate requests were inadequate. First, with respect to Questions 5, 6 and 7, concerning the escrow account, plaintiffs acknowledge that Wells Fargo *did* provide information about the escrow account, but contends that its response fails to both cover the entire period of time and to provide sufficient detail as to the nature of the payments into or out of the escrow account. (Pl.'s Opp'n (dkt. #18) 10-11.) Second, plaintiffs point to Questions 8, 9, and 10, seeking an accounting, and complain that, here, too, defendant's response, dating back to November 12, 2013, was insufficient, as well as raising seemingly immaterial challenges to the timing of receipt of certain payments. (*Id.* at 12-13.) Third, plaintiffs harp on Wells Fargo's failure to provide all of the interest rates applied to the loan, as requested in Question 18.

With respect to the first and second challenges, the court readily finds that defendant Wells Fargo *did* respond and provided extensive information. The limits defendant placed on the requests must be viewed in the context of the 2011 loan modification agreement, a copy of which Terrance was required to keep in his files, which detailed the adjustable interest rates applied to the loan in 2011 and in each succeeding year for the life of the loan. Also, the fact that Deutsche Bank had obtained a judgment

of foreclosure, effectively limits the relevance of the information sought to the post-judgment timeframe. *See Perron*, 845 F.3d at 857 (finding any failure to provide information already supplied in earlier correspondence to be a "technical" failure).

Even setting aside whether Wells Fargo's response failed to provide all of the information plaintiffs requested for the full period of time of the mortgage, Wells Fargo *fully* complied with RESPA, or at least plaintiffs have failed to raise a genuine issue of material fact from which a reasonable jury could conclude otherwise. For example, plaintiffs acknowledge that the "response was *sent* in the time allowed by RESPA." (Pls.' Opp'n (dkt. #18) 9.)[8] By the court's own math, the response was sent exactly 30 days after Wells Fargo's receipt of the QWR, excluding legal holidays, Saturdays and Sundays. Moreover, the response (1) organized plaintiffs' requests by category, (2) provided thorough answers to several of the requests, and (3) attached voluminous documents to the request for plaintiffs' review. Finally, for any requests to which Wells Fargo did not respond or only responded in part, Wells Fargo explained, "[w]e're unable to provide any further information because your remaining requests are too broad. If you provide us with more specific details about what you're seeking, we'll review your request again." (Golden Aff. (dkt. #15-2) 3.) Such a detailed, seemingly good faith response is surely *all* that is required under RESPA, at least as an initial matter to such a sweeping, poorly-focused

---

[8] Critically, plaintiffs filed the present lawsuit *before* the time had lapsed for Wells Fargo to respond and *before* Wells Fargo's response. Indeed, plaintiffs' allegation in their complaint that "Wells Fargo provided no substantive response to the letter within 30 days" [of receipt] (Compl. (dkt. #1) ¶ 26) is patently false, which certainly raises a question as to whether plaintiffs and their counsel should be subject to Rule 11 sanctions.

request for information.[9]   12 U.S.C. § 2605(e)(2) (requiring that a mortgage services "investigate the borrower's account and either provide the requested information or provide an explanation as to why the requested information is unavailable," among two other options); *see also Perron*, 845 F3d at 857.

Plaintiffs' attempt to rely on Wis. Stat. § 224.77 to expand defendant's obligations to respond to such request fares no better.  As an initial matter, plaintiffs offer *no* argument or support for interpreting the state law claim more broadly than what is required under RESPA.  To the contrary, in *Diedrich*, the Seventh Circuit interpreted the statute -- in particular, its reference to "federal law" -- to effectively limit § 224.77's requirements to those under RESPA.  839 F.3d at 587.  And again, even if the language of § 224.77 regulated mortgage brokers' behavior beyond that required under RESPA, plaintiffs' complaints about Wells Fargo's actions with respect to the 2011 loan modification or treatment of the escrow account would be barred either by the *Rooker-Feldman* doctrine or claim preclusion.

## C.  Damages

Even if plaintiffs had advanced enough evidence for a reasonable trier of fact to find a violation of RESPA or Wisconsin state law, at summary judgment, it is also plaintiffs' burden "to come forward with evidence sufficient to support an award of actual damages

---

[9] Perhaps if Wells Fargo has simply responded that the requests were too broad -- full stop -- that would not be sufficient to satisfy RESPA.  Instead, defendant provided a thorough response, attaching documentation, and then stated that any unanswered requests were too broad and needed to be narrowed.  Defendant's response must be viewed both in the context of the scope of plaintiffs' requests and the thoroughness of defendant's response, and plaintiffs' apparent failure to follow up promptly and in good faith if a response was inadequate.

to pursue their RESPA claims." *Diedrich*, 839 F.3d at 591; *see also id.* at 594 (applying same requirement to Wis. Stat. § 224.77 claims). Specifically, where the plaintiffs have a history with a mortgage servicer that extends well beyond the alleged RESPA violation, plaintiffs must demonstrate "not just that [the mortgage servicer] was responsible for these injuries, but specifically, that [the mortgage servicer's] failures to comply with RESPA section 2605(e)(2) caused their injury." *Id.*

In response to defendant's argument that plaintiffs have suffered no injury because of the claimed RESPA or Wisconsin state law violations, plaintiffs first argue that defendant's "discovery responses *did not ask the Moores how they had been damaged or how damages were calculated*." (Pl.'s Opp'n (dkt. #18) (emphasis in original).) This argument is silly for two reasons. First, regardless of any specific discovery requests, plaintiffs have an *independent* obligation under Federal Rule of Civil Procedure 26(a)(1)(A)(iii) to provide "a computation of each category of damages claimed by the disclosing party." Second, even if damages were not a topic of discovery, once defendant puts proof of damages in issue at summary judgment, plaintiffs are *obligated* to come forth with evidence of actual damages, which is a necessary element of their claim.[10] *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 937

---

[10] While defendant does not frame its challenge to plaintiffs' lack of damages as one of standing, the injury requirement for Article III standing "overlaps with the injury requirement" under RESPA; "[t]he injury must be 'actual,' both for standing purposes and for purposes of the statute." *Diedrich*, 839 F.3d at 589 (discussing RESPA's remedy provision, 12 U.S.C § 2605(f)). In *Diedrich*, the Seventh Circuit concluded that the plaintiffs' allegations that they "suffered damages to their credit," and they were "forced to pay Ocwen more money and higher interest rates by law or by the terms of their loan modification agreement to pay" were sufficient to demonstrate standing at the pleadings stage, but affirmed the district court's grant of summary judgment to the defendant for failing to offer any proof of a causal connection between the alleged injuries and the alleged RESPA violation. *Id.* at 589-592; *see also Perron*, 845 F.3d at 858 (treating challenge to damages as element of claim, rather than as challenge to standing); *Mikulski*, 2017 WL 3701213, at *5 (concluding that the alleged causal chain was sufficient to establish standing and survive a motion to dismiss). While

(7th Cir. 2010) ("Summary judgment is the 'put up or shut up' moment in a lawsuit.").

In fairness, plaintiffs also seek to meet their burden at summary judgment by offering two categories of alleged damages caused by defendant's claimed violations of RESPA and Wisconsin state law. *First*, plaintiffs complain that they have incurred a number of out of pocket costs. Specifically, Terrance alleges that he has incurred "$1,800 in attorney's fees to have his lawyer help him draft a qualified written request, and to try to review and figure out what information had been provided and what had not." (Pl.'s Opp'n (dkt. #18) 15.) However, damages in the form of attorney's fees associated with drafting the QWR could *not* be *caused by* defendant's failure to comply with RESPA in responding. Drafting (and the expenses associated with it) necessarily *preceded* the alleged injury. Nor can plaintiffs claim an injury based on attorney's fees associated with determining whether defendant violated RESPA. *See Diedrich*, 839 F.3d at 593 ("[S]imply having to file suit, however, does not suffice as a harm warranting actual damages." (internal citation and quotation marks omitted)).

Next, in terms of other out of pocket expenses, plaintiffs contend that without "his actual arrearages," Terrance had to estimate them at $45,000 for purposes of his bankruptcy proceeding, and as a result, the bankruptcy plan requires him to pay $150 per month in payments on the plan debts. (Pl.'s Opp'n (dkt. #18) 15-16.) Plaintiffs' contention that Terrance did not have enough information to calculate his arrearages accurately rings hollow. By the time, Moore filed for bankruptcy in November 2016, he

---

a close question, the court finds Terrance's allegations of damages sufficient for standing purposes in light of *Diedrich*.

had received Wells Fargo's response to his Inquiry, stating the exact amount defendant believed he owed on his loan, $60,526.59, and attaching an account history. (Golden Aff., Ex. 2 (dkt #15-2).) This information should have been sufficient for Terrance to estimate his arrearages for bankruptcy petition. At the very least, plaintiff has failed on summary judgment to explain why it was not.

Moreover, plaintiffs did *not* even report the full amount Wells Fargo claimed was due and owing, instead discounting it by $15,000. As such, plaintiffs cannot argue that they overestimated the arrearages, thus resulting in a higher monthly amount under the bankruptcy plan. Moreover, plaintiffs' argument that defendant's alleged RESPA violation has caused the Moores to fall behind on their electrical and cable bills lacks any causal connection. (Pls.' Opp'n (dkt. #18) 16.) And again, regardless of whether defendant failed to provide an accurate accounting, requiring Terrance to discount it by one-quarter, there is no basis for finding this failure forced plaintiffs to pay a higher monthly payment as part of Terrance's bankruptcy plan.

Plaintiffs also claim out-of-pocket expenses associated with his bankruptcy proceeding: "he only filed the bankruptcy because it was his only option; Wells' failure to appropriately respond to the QWR hampered his ability to reopen his state court foreclosure case." (Pls.' Opp'n (dkt. #18) 17.) Again, this theory is wholly bellied by the record. Moore attempted to reopen the state court foreclosure judgment and file counterclaims, but the state court denied his request because it was untimely, having been filed approximately four *years* after the judgment of foreclosure. Moreover, Moore filed his motion to add counterclaims *before* the Wells Fargo's response was due. Here, too, there is

*no* causal connection between the alleged injury and the alleged violation, or at least a reasonable jury would have no basis to find on this record.

*Second*, plaintiffs claim damages for emotional distress. While the Seventh Circuit held in *Catalan* that damages for RESPA violations could encompass emotional distress, 629 F.3d at 696, plaintiffs' claim of emotional distress here is *not* tied to the RESPA violation. Instead, Terrance seeks emotional distress damages based on watching the judge ordering their house to be sold, having to tell his wife of this event, and having to file bankruptcy, among other events. While the court has no reason to question Terrance's statements that these events were upsetting, any emotional reaction was not reasonably caused by the claimed RESPA violation, especially given the breadth of defendant's actual response, but rather by the state court judgment of foreclosure, the subsequent order of a sheriff's sale, and Terrance's decision to file bankruptcy again to avoid losing his house.

Just as in *Deidrich*, plaintiffs here "simply have not alleged any causal connection between the injury they allege, including the claim for emotional damages, and [Wells Fargo's] failure to respond to the qualified written request for information, as opposed to the foreclosure on their loan, the loan modification process, or the litigation in general." *Diedrich*, 849 F.3d at 592. Even if Wells Fargo's "response fell slightly short of full compliance as a technical matter," plaintiffs have not, and cannot, demonstrate that their injuries were caused by this failure. *Perron*, 845 F.3d at 857 (affirming grant of summary judgment to defendant where plaintiff failed to demonstrate any injury caused by alleged RESPA violation). In *Perron*, the court rejected the plaintiffs' claim that the RESPA violation contributed to the dissolution of their marriage and resulting emotional distress,

finding that "[t]his kind of claimed harm is far too attenuated from the alleged violation to cross the proximate-cause threshold." *Id.* at 858 (citing Restatement (Second) of Torts § 281 cmt. f (1965)).

Plaintiffs' claim under Wis. Stat. § 224.77 fares no better. For violations of § 224.77, an "aggrieved party" may bring an action for damages against a mortgage broker. *See* Wis. Stat. § 224.80(2). An "aggrieved party," however, is "one having an interest . . . which is injuriously affected." *Liebovich v. Minn. Ins. Co.*, 2008 WI 75, ¶ 36, 310 Wis. 2d 751, 774, 751 N.W.2d 764, 775 (internal citation and quotation marks omitted). "For the same reasons, the claim under the Wisconsin statute goes down with the federal claim's ship." *Diedrich*, 839 F.3d at 594.

## ORDER

IT IS ORDERED that:

1) Defendant Wells Fargo Home Mortgage's motion for summary judgment (dkt. #13) is GRANTED.

2) The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 15th day of February, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge